SICULA AMERICANA DI NAVIGAZIONE A VAPORE v. DALZELL et al.

(District Court, S. D. New York. April 17, 1913.)

1. Towage (§ 15*)—Liability for Injury to Tow—Burden and Measure of Proof.

In the performance of a towage service, due care and maritime skill, such as the situation and conditions may reasonably require, must be exercised; and where injury results to the tow while under control of the tug, there is a presumption that the latter was in fault, and the tow is not required to prove a specific act of negligence.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 30–38; Dec. Dig. § 15.*]

2. Towage (§ 11*)—Injury to Tow—Liability of Tugs.

The injury of a steamship by striking a pier while being swung into her berth by two tugs *held*, under the evidence, due to the fault of the

master of one of the tugs, who was on board in charge of her movements, in stopping one of her engines, but not the other; the effect being to swing her stern against the pier.

[Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11–23; Dec. Dig. § 11.*]

In Admiralty. Suit by the Sicula Americana di Navigazione a Vapore, owner of the steamship San Giorgio, against Frederick B. Dalzell and W. Freeland Dalzell, doing business as Frederick B. Dalzell & Co. Decree for libelant.

Convers & Kirlin, of New York City (J. Parker Kirlin and William H. McGrann, both of New York City, of counsel), for libelant.

Burlingham, Montgomery & Beecher, of New York City, for respondents.

HAZEL, District Judge. This is a libel in personam to recover damages for negligent towing by the tugboats Dalzelline and C. P. Raymond, owned by the respondents. The question submitted for decision, on conflicting evidence, is whether the respondents, in negligently allowing the steamer to strike the side of Pier 22, Brooklyn, N. Y., while swinging into her berth, were solely at fault for the injuries resulting therefrom to her propeller blades. They deny that the steamer sustained any damage from negligent handling on the part of the tugs, asserting that the steamer was berthed in the usual way, and that, if there was a collision of the steamer with the pier, it occurred on account of the parting of the steamer's hawser or bowline, and in no other way.

There was some testimony on behalf of respondents, throwing doubt upon the claim of the libelant that the steamer struck the pier; but on this phase of the controversy I think it is shown by preponderating evidence that, during the course of the maneuvering to swing her into her berth, the steamer struck the pier, sustaining the injuries complained of. It is true that during the maneuvering the steamer's forward hawser, running from the forecastle to the end of the pier, parted; but I am satisfied by the evidence that such parting of the line occurred subsequent to the steamer's impact with the pier, at a time when she was parallel thereto, and moving astern. From the fact that the piles were damaged about 200 feet distant from the outer end of the pier, it may fairly be presumed that the steamer struck when her stern was about 200 feet inside the slip, since, if the striking had occurred when the bowline broke, the damage to the pier would no doubt have been considerably removed from the end.

The libelant has fairly shown that the injuries were received before the steamer was alongside the pier, and that they were received while she was in a position at an angle thereto. The steamer's build was such that she could strike the pier with her starboard quarter while her bow was swinging away from the pier line, and at the same time receive injuries to her propeller blades.

[1] Were the tugs negligent in the performance of the towage

service? The rule of law is that in the performance of such service due care and maritime·skill, such as the situation and conditions may reasonably require, must be exercised. The Webb, 14 Wall. 406, 20 L. Ed. 774; The Margaret, 94 U. S. 494, 24 L. Ed. 146. Indeed, under the doctrine of the W. G. Mason (D. C.) 131 Fed. 632, it is unnecessary for libelant to prove a specific act of negligence on the part of a tug which engages to fulfill a towage contract.

[2] At the time of the accident the steamer San Giorgio was in charge of the master of the tug Dalzelline, the latter being on her port side forward, and the claim is that the contact with the pier was· due to failure to seasonably direct the stopping of the port engine. The evidence shows that the tide was pushing against the steamer on her starboard side, and was assisting in swinging her forward, and that, while Capt. Keene of the Dalzelline ordered the stopping of the right engine, he negligently allowed the port engine to go full speed astern, which caused the steamer, because of opposite strains, to turn rapidly, and that, when the belated order to stop the port engine was given, impact with the pier could not be avoided.

This version of the occurrence, as narrated by the master of the steamer, is corroborated by the second officer, who was stationed aft, and by other witnesses. I am satisfied, by the evidence, that if the port engine had been stopped, or if the order "Half speed," had been given, the accident would not have occurred. Such improper maneuvering not having been explained or excused, the respondents must be held in fault therefor.

It is also claimed by libelant that the tugboats should have pushed against the port bow while the steamer was being swung to the pier, and that their failure to do so was a contributing cause of the accident, and enabled the steamer to get into an oblique position; but I think that the principal fault, as before stated, was the failure to seasonably stop the port engine, or at least to run it at half speed, and it is therefore unnecessary to pass upon any additional claims of negligence on the part of the respondents.

Upon examination, I find that the various contentions of respondents as to fault in several respects on the part of the steamer are not sustained by the evidence, and therefore a decree may be entered in favor of the libelant, with damages and costs.